UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NATHAN RODNEY,

                Plaintiff,

-against-

UNITED MASTERS,[1]

                Defendant.
----------------------------------------------------------X

**REPORT & RECCOMENDATION**
**21 CV 5872 (DG)(LB)**

**BLOOM, United States Magistrate Judge:**

    Plaintiff Nathan Rodney, proceeding *pro se*, brings this action alleging trade secret misappropriation under the federal Defend Trade Secrets Act of 2016 (DTSA), 18 U.S.C § 1836, et seq., and New York common law. Defendant moves to dismiss plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Honorable Diane Gujarati referred defendant's motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, I respectfully recommend that defendant's motion should be granted, and plaintiff's Amended Complaint should be dismissed.

## FACTS

    In October 2017, plaintiff established MIG Media ("MIG"), "a software and event company geared towards independent musicians." ECF No. 19 ("Am. Compl.") at 2.[2] Plaintiff's idea for MIG came from interviews, surveys and "experiments" conducted in August 2017 that demonstrated independent musicians required support. Id. at 2, 11. Independent artists "did not know what to do" but there "was a desire for them." Id. at 10. Plaintiff's plan was to "capitalize

---

[1] Plaintiff's Amended Complaint names United Masters. Defendant's motion lists UnitedMasters LLC. The Court refers to United Masters (two words) throughout this Report for consistency with plaintiff's pleading.

[2] The Court references the assigned ECF page numbers of plaintiff's documents throughout this Report.

and build on this opportunity" by creating an "online community for music creators and professionals, with support material, development and a distribution pipeline." Id. The company would use "marketing methods to drive traffic" to the platform. Id.

Prior to officially founding MIG, plaintiff contacted an unidentified individual via the workplace networking platform LinkedIn to "potentially bring [them] into the company[.]" Am. Compl., at 2, 8. Plaintiff and the individual spoke in September 2017, id. at 3, to discuss a "potential partnership" (hereafter the "September 2017 call"). Id. at 8. During this conversation, plaintiff disclosed "information (processes, concepts, plans) shared in regards to the future of the company for the purposes of a potential partnership." Id. The extent of plaintiff's contact with this individual a was a "lengthy phone call . . . about a business." Id. at 9. Plaintiff does not allege that this unnamed person signed a non-disclosure agreement ("NDA"), although plaintiff states "[t]here are other parties" who did sign NDAs. Id.

According to his LinkedIn page, the individual who plaintiff had spoken to in September 2017 went to work for defendant United Masters in February 2018. Id. at 3. Plaintiff did not learn of this until 2021, when he viewed the unidentified individual's LinkedIn profile after he was "reminded" to "go back and reevaluate" MIG.³ Id. at 4. Plaintiff also states that "[t]he earliest" he could "imagine" that he "would have seen" the individual's LinkedIn profile would have been "later on in 2018[.]" Id.

According to plaintiff, "defendant offers a culture for independent artists and is offering services within that culture." Id. at 12. Between plaintiff's company and defendant, "[t]he cultures are similar, the services are similar, and the target market is essentially the same." Id. These

---

³ An "Application for Employer Identification Number" annexed to plaintiff's amended complaint lists MIG's start date as October 10, 2017, am. compl. Ex. C, ECF No. 19 at 20, but it is not clear whether plaintiff was still operating MIG in 2021.

similarities lead plaintiff to "presume . . . that there was some utilization of [plaintiff's] trade secrets" by defendant, id., and that the September 2017 call with the unidentified individual was a "potential route" for such secrets to pass from plaintiff to defendant. Id. at 3.

## PROCEDURAL HISTORY

On October 14, 2021, plaintiff commenced the instant *pro se* action against United Masters. ECF No. 1. On March 23, 2022, plaintiff moved to amend his complaint. ECF No. 19. On March 31, 2022, the Court granted plaintiff's motion, and accepted the document filed at ECF No. 19 as the Amended Complaint. See Electronic Order dated Mar. 31, 2022. Defendant now moves to dismiss plaintiff's Amended Complaint ("Def's Mot.", ECF No. 23; "Def's Mem.", ECF No. 24; "Def's Affs.", ECF No. 25). Plaintiff opposes the motion, ("Opp.", ECF No. 22), defendant replied ("Reply", ECF No. 26) and plaintiff filed a sur-reply, ("Sur-Reply", ECF No. 27). Judge Gujarati referred the motion to me for a Report and Recommendation. Electronic Order dated Oct. 28, 2022.

## DISCUSSION

### I.   Standard of Review

A court reviewing a motion to dismiss must accept all factual allegations in the amended complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," id., or "speculative," Twombly, 550 U.S. at 555. A plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). If

a plaintiff does not "nudge[] [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

As plaintiff is representing himself in this matter, the Court has a duty to liberally construe his pleading. "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal citation omitted)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) ("[w]e liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.'" (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (internal citation omitted)).

## II.     Federal DTSA Claim

"The Defend Trade Secrets Act provides a federal cause of action for trade-secret misappropriation involving a nexus to interstate commerce." Turret Labs USA, Inc. v. CargoSprint, LLC, No. 19-CV-6793, 2021 WL 535217, at *4 (E.D.N.Y. Feb. 12, 2021) (citing 18 U.S.C. § 1836(b)), *aff'd*, 2022 WL 701161 (2d Cir. Mar. 9, 2022) (summary order).[4] "To state a claim for trade secret misappropriation under the DTSA, 'a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret.'" TRB Acquisitions LLC v. Yedid, No. 20-CV-552, 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (quoting Democratic Nat'l Comm. v. Russian Fed'n, 392 F. Supp. 3d 410, 447 (S.D.N.Y. 2019)). "Similarly, under New York law, 'a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.'" 24 Seven, LLC v. Martinez,

---

[4] The Clerk of Court is respectfully directed to mail plaintiff the attached copies of all unreported decisions cited herein.

4

No. 19-CV-7320, 2021 WL 276654, at *4 (S.D.N.Y. Jan. 26, 2021) (quoting In re Document Techs. Litig., 275 F. Supp. 3d 454, 461-62 (S.D.N.Y. 2017)). The "'elements for a misappropriation claim under New York law are fundamentally the same' as a DTSA claim. . . ."[5] Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc., 602 F. Supp. 3d 663, 671 (S.D.N.Y. 2022) (quoting Iacovacci v. Brevet Holdings, LLC, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020)); see also Turret Labs USA, Inc., 2021 WL 535217, at *6 (dismissing misappropriation of trade secrets claim under New York common law "for substantially the same reasons that the [plaintiff] fails to plead a DTSA claim").

**A. Trade Secret**

As defined by the DTSA, a trade secret includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" subject to two important limitations. 18 U.S.C. § 1839(3). First, the owner must have "taken reasonable measures to keep such information secret[.]" Id. § 1839(3)(A). Second, the information must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." Id. § 1839(3)(B); Turret Labs USA, Inc., 2021 WL 535217, at *4.

    i.    <u>Identification of a Trade Secret</u>

Key to DTSA cases is whether the plaintiff has sufficiently identified the alleged trade secret at issue. "[T]he pleading standard set forth in Twombly and Iqbal requires that the complaint

---

[5] New York courts utilize a six-factor test to determine whether information constitutes a trade secret under state law, "considering: [i] the extent to which the information is known outside of the business; [ii] the extent to which it is known by employees and others involved in the business; [iii] the extent of measures taken by the business to guard the secrecy of the information; [iv] the value of the information to the business and to its competitors; [v] the amount of effort or money expended by the business in developing the information; [and] [vi] the ease or difficulty with which the information could be properly acquired or duplicated by others." Catalyst Advisors, L.P., 602 F. Supp. 3d at 672 (internal quotation and citation omitted).

5

allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value, and measures taken to safeguard it to support an inference that the information qualifies as a trade secret[.]" Intrepid Fin. Partners, LLC v. Fernandez, No. 20-CV-9779, 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) (internal quotation and citation omitted). "This requirement exists both so that defendants are put on notice of what items they allegedly misappropriated and so that a court can ascertain the protectability of the information at issue." Sapir v. Rosen, No. 20-CV-6191, 2021 WL 4482277, at *7 (S.D.N.Y. Sept. 30, 2021), *reconsideration denied*, 2021 WL 5042928 (S.D.N.Y. Oct. 29, 2021) (citations omitted). Such information is necessary to distinguish trade secrets from merely confidential business information. The two "are not one and the same—trade secrets are a subset of confidential information and alleging their existence requires much more specificity as to the information owned by the claimant." Intrepid Fin. Partners, LLC, 2020 WL 7774478, at *4 (quotation and citation omitted).

While a plaintiff obviously need not include a detailed description of the trade secret to state a claim for misappropriation, the complaint must contain more than "nebulous descriptions at the highest level of generality." TRB Acquisitions LLC, 2021 WL 293122, at *2 (quotation and citation omitted). "[A] 'vague and indefinite' piece of information cannot be protected as a trade secret." Broker Genius, Inc. v. Zalta, 280 F. Supp. 3d 495, 515 (S.D.N.Y. 2017) (quoting Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co., 1 F. Supp. 3d 224, 258 (S.D.N.Y. 2014)). "Alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue, does not give rise to a plausible allegation of a trade secret's existence." Sapir, 2021 WL 4482277, at *5 (quoting Elsevier Inc. v. Dr. Evidence, LLC, No. 17-CV-5540, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018)),

Plaintiff describes his alleged trade secret here in a very generalized and vague way. Plaintiff states the "main trade secret here is the . . . need for support for most, non major label affiliated, artists." Am. Compl. at 10. He adds that "[t]he plan to capitalize and build on this opportunity was also a trade secret[.]" Id. Plaintiff describes the information he revealed on the September 2017 call to the unnamed individual as "information (processes, concepts, plans)" that was "regarding a community and software for independent artists wherein the idea was utilized using conclusions drawn from the deliberate collection of data." Id. at 8.

Plaintiff's Amended Complaint fails to allege the "particulars of how [his] strategies and plans function…." TRB Acquisitions LLC, 2021 WL 293122, at *2. In TRB Acquisitions LLC, for example, the Court held that plaintiff's allegations that defendant misappropriated "core brand and marketing plan strategy"—including which consumers to target and potential partners—were "far too general to state a DTSA claim." Id. Plaintiff's allegations here fail for similar reasons. Intrepid Fin. Partners, LLC, 2020 WL 7774478, at *4. ("[G]eneral and vague references to methods, processes, interpretation, programs, and data configuration protocols do not plausibly support the existence of a trade secret without supportive facts explaining, for example, how such strategies, techniques or models function…." (citation omitted)); Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020) (finding plaintiff failed to put defendants on notice as to trade secrets at issue by describing them as "proprietary, secret and confidential information relating to cash management and money regulation systems and, in particular, to the implementation" of certain patents). "If [plaintiff's] strategy was to use as broad a vocabulary as possible in the hopes that some terminology would hit upon a trade secret definition, this strategy backfired, because it prevents [defendant] and the Court from meaningfully

discerning the protectability of specific documents or information….″ Sapir, 2021 WL 4482277, at *7 (citation omitted).

While plaintiff describes the "plan" he believes to be a trade secret as the creation of a "community for music creators and professionals, with support material, development, and a distribution pipeline[,]" am. compl. at 10, such overarching descriptions do not constitute "specific allegations as to the information owned and its value." Elsevier, 2018 WL 557906, at *4 (granting motion to dismiss misappropriation claim where plaintiff failed to "elucidate how those 'methods,' 'processes,' and 'interpretations' [claimed to be trade secrets] function") (citation omitted). Plaintiff references information he gathered which inspired and guided his company, but plaintiff does not allege that this information is, itself, a trade secret,[6] nor does he connect this information with the alleged trade secrets in a way that would put defendant (and the Court) on notice as to what information plaintiff is talking about. Instead, plaintiff states that the alleged trade secrets were the product of "decisions made after analyzing the data [he] gathered" and, similarly, the "conclusions drawn from the deliberate collection of data." Am. Compl. at 2. Cf Lavvan, Inc. v. Amyris, Inc., No. 20-CV-7386, 2021 WL 3173054, at *4 (S.D.N.Y. July 26, 2021) (plaintiff sufficiently describes "regulatory and business trade secrets about market opportunities and manufacturer selection" where it "explains how it turned these trade secrets" into presentations and analysis shared with defendant and "details the efforts put into creating its analyses"). The plans, goals, and processes plaintiff was putting into effect at this time may have been something he wanted to keep confidential, but the vague and categorical descriptions he alleges in the Amended Complaint fail to identify such information as a trade secret.

---

[6] Even if effort must be expended to gather data from publicly available sources, that data generally does not constitute a trade secret. See 24 Seven, LLC, 2021 WL 276654, at *8 (While "[p]laintiff alleges that it expended significant resources on gathering this data, this fact does not overcome the evidence that supports an inference that the data was publicly accessible to other" companies in the field).

8

   ii.  Reasonable Measure to Protect the Trade Secret

  Even assuming plaintiff had sufficiently identified information that could plausibly constitute a trade secret, his Amended Complaint would still be dismissed for failure to state a claim because he voluntarily disclosed the information at issue during the September 2017 phone call without taking reasonable steps to ensure its secrecy. "To succeed on a claim of misappropriation of trade secrets under the DTSA and New York common law, the owner of the trade secret must take 'reasonable measures' to keep the proprietary information secret." Mason v. Amtrust Fin. Servs., Inc., 848 F. App'x 447, 450 (2d Cir. 2021) (summary order) (citing 18 U.S.C. § 1839(3)); Ashland Mgmt. v. Janien, 82 N.Y.2d 395, 407, (1993) ("[A] trade secret must first of all be secret[.]"). "Simply reciting that information is confidential, without alleging any other facts to support the confidential nature of the information or the measures taken to protect such information, is inadequate." Inv. Sci., LLC v. Oath Holdings Inc., No. 20-CV-8159, 2021 WL 3541152, at *4 (S.D.N.Y. Aug. 11, 2021) (citation omitted).

  "The DTSA gives scant guidance on what constitutes 'reasonable measures' to keep information secret[,]" but the inquiry depends "in significant part" on the nature of the trade secret. Turret Labs USA, Inc., 2022 WL 701161, at *2 (quotations and citations omitted). "Most courts in this Circuit look to contractual confidentiality agreements or physical security measures when determining whether a party took reasonable measures to keep information secret." Charles Ramsey Co., Inc. v. Fabtech-NY LLC, No. 18-CV-546, 2020 WL 352614, at *15 (N.D.N.Y. Jan. 21, 2020). Such measures may include "password-protection, sharing information with employees only on a need-to-know basis, emphasizing the need to keep the information confidential in an employee handbook, and frequently reminding employees of the need to maintain confidentiality." Id. at *23 (internal quotation and citation omitted). However, merely informing employees that

9

certain information is a trade secret is "generally not sufficient" to constitute reasonable measures. Altman Stage Lighting, Inc. v. Smith, No. 20-CV-2575, 2022 WL 374590, at *5 (S.D.N.Y. Feb. 8, 2022). "Courts regularly deny trade secret protection if the owner voluntarily discloses the alleged secret." Zabit v. Brandometry, LLC, 540 F. Supp. 3d 412, 425 (S.D.N.Y. May 18, 2021) (collecting cases).

Here, plaintiff admits that he had no confidentiality agreement with the individual to whom he voluntarily disclosed the information he now claims was a trade secret during the September 2017 conversation.[7] See Mason, 848 F. App'x at 451 (holding plaintiff failed to take reasonable measures to protect his trade secret where plaintiff disclosed it to defendant without executing an agreement restricting use, notwithstanding that plaintiff alleged a "handful of unilateral measures" taken to otherwise protect the information); Zabit, 540 F. Supp. 3d at 425-26 (finding plaintiffs failed to take reasonable measures to keep information secret where the complaint was "rife with allegations acknowledging" that others knew the information but were "not subject to any confidentiality agreements or otherwise instructed to keep the information confidential"). Plaintiff

---

[7] In opposition, plaintiff claims that it is "highly likely" that he told the individual on the call "that we were a startup with a secret business plan derived from data." Sur-Reply at 15. Even taken as true, this is not sufficient. Plaintiff relies heavily on Xavian Insurance Company v. Marsh & McLennan Companies, Inc., in which the court, in denying defendant's motion to dismiss in part, rejected the argument that the plaintiff had failed to take reasonable measures to protect the trade secrets at issue. No. 18-CV-8273, 2019 WL 1620754, at *6 (S.D.N.Y. Apr. 16, 2019). The Court credits plaintiff's efforts to find support and also read the cases cited by defendant, but in Xavian, plaintiff had taken numerous concrete measures when he disclosed the alleged trade secrets, including having written confidentiality agreements and marking documents containing trade secrets as privileged. For example, when disclosing a copy of its business plan to one of the defendants, the plaintiff included a section titled "Confidential Undertaking -- Must Read", which contained explicit warnings that the contents contained trade secrets and that no portion of the plan should be disclosed except to those who agree in writing to keep it confidential. Id. at *2. Plaintiff took no such measures when he disclosed his information on the September 2017 call.

Additionally, while the plaintiff in Xavian included trade secrets in attachments to its business plan, the business plan was not, itself, deemed to be a trade secret—rather, specific elements were deemed trade secrets, namely actuarial work pertaining to foreign airlines and a rating analysis that would be used by credit agencies to evaluate plaintiff. Id., at *1. By contrast, plaintiff here asserts his idea and entire plan was a trade secret.

10

argues that he utilized "passwords, security,"[8] limited disclosure of the information, and required other unidentified people to sign confidentiality agreements. Opp. at 19, 34-37. But plaintiff does not explain how these measures operated to protect the alleged trade secrets at issue. Indeed, none of these measures were employed to impose confidentiality obligations on the September 2017 call. See Turret Labs USA, Inc., 2022 WL 701161, at *3 (affirming dismissal of DTSA claim where plaintiff failed to protect trade secrets apparent to all users of a product through confidentiality or licensing agreements restricting access and distribution of the product).

Plaintiff claims that "it is reasonable to assume" that the September 2017 conversation was governed by "implied and express contract [of confidentiality], due to backgrounds, explanations, and reasonable understanding." Am. Compl. at 8. Plaintiff's reliance on some sort of contract, either express or implied, is without basis. There is no basis in law or fact for inferring an express or implied contract existed under these circumstances merely because plaintiff spoke to someone "about a business." Id. at 9.

In any event, "[p]laintiff provides no case law, and this Court is unaware of any, to support the proposition that an implied contract of confidentiality constitutes a 'reasonable measure' to protect a trade secret."[9] Inv. Sci., LLC, 2021 WL 3541152, at *4; see also Zabit, 540 F. Supp. 3d at 427 (finding that an alleged duty of loyalty "does not somehow transform . . . freely-shared

---

[8] These conclusory allegations fail to demonstrate that plaintiff took reasonable measures. Imposing password protection alone is insufficient. See Inv. Sci., LLC, 2021 WL 3541152, at *4 (requiring a username and password to access work email on a phone is "not a reasonable measure because it fails to differentiate from a protective measure that is used to safeguard any other corporate information…").

[9] One case plaintiff cites in his sur-reply as supporting his claim to the contrary is not relevant. In Desny v. Wilder, Supreme Court of California recognized a cause of action for breach of an implied contract when a plaintiff (such as a writer) discloses an idea to a defendant (such a director or agent), with both understanding that there is an expectation to be paid for the work. 46 Cal. 2d 715 (1956). Plaintiff's claim is not for breach of contract and not under California law, nor are the circumstances under which he revealed his allegedly confidential information similar to those in Desny. Plaintiff further argues that Investment Science is not on point because the plaintiff in that case "did not give the information out on a need to know basis." Sur-Reply at 24. But Investment Science is directly relevant because the court in that case rejected the argument that an asserted "understanding of confidentiality and restricted use" constitutes a reasonable measure to protect a trade secret. Inv. Sci., LLC, 2021 WL 3541152, at *4.

information into a *secret*") (emphasis in original). Indeed, courts have noted that signed confidentiality agreements, standing alone, are not necessarily sufficient to confer trade secret status on the underlying information. Universal Processing LLC v. Weile Zhuang, No. 17-CV-10210, 2018 WL 4684115, at *3 (S.D.N.Y. Sept. 28, 2018) ("[B]ecause trade secrets represent a subset of confidential information, taking steps to protect information through a confidentiality agreement alone does not suggest the existence of a trade secret." (citing Elsevier Inc., 2018 WL 557906, at *6)). Plaintiff's reliance on the existence of an express or implied contract under these facts is misplaced. As plaintiff failed to take reasonable measures to protect his alleged trade secrets, he fails to state a claim under the DTSA.

    iii.    Independent Economic Value

Even if plaintiff had taken reasonable measures to protect his alleged trade secrets, he fails to allege any facts demonstrating that his alleged trade secrets derive independent economic value "from not being generally known … and not being readily ascertainable through proper means…." 18 U.S.C. § 1839(3)(B); see Zirvi v. Flatley, 433 F. Supp. 3d 448, 465 (S.D.N.Y. 2020) (dismissing misappropriation claim where plaintiffs failed to allege how the alleged trade secrets at issue derive "independent economic value from not being generally known" given the existence of publicly available information that essentially made the information at issue worthless and noting the "quantity of similar" information "publicly available. . ."), *aff'd*, 838 F. App'x 582 (2d Cir. 2020) (summary order). Plaintiff argues without support that "it is easy to see" how his "more specific conclusions would be of significant value to competitors."[10] Opp. at 10. Plaintiff fails to allege how his processes, plans, or conclusions provided a valuable edge over competitors, or why such

---

[10] Plaintiff states that music industry market information contained on a slide that he has annexed to his complaint, am. compl. Ex. E, ECF No. 19 at 21, demonstrates why his business information is valuable. Opp. at 10. But a slide from a presentation plaintiff found online does not plausibly support an inference that plaintiff's alleged trade secret was of independent economic value.

12

value was due to the secrecy of the underlying information. See 24 Seven, LLC, 2021 WL 276654, at *9 (dismissing trade secret claim where plaintiff failed to allege that its compilation of pricing information gave them a competitive edge); Inv. Sci., LLC, 2021 WL 3541152, at *4 (finding plaintiff's "bare recital" of independent economic value element of DTSA claim was insufficient where plaintiff "does not allege why" the information at issue provides an economic advantage over others who do not know or use it). Indeed, it seems likely that others in the music industry knew of or could have readily ascertained independent artists' need for services.

### B. Misappropriation

Even assuming plaintiff plausibly alleged that the information at issue was a trade secret, he fails to plausibly allege that defendant misappropriated his trade secret for the simple reason that he alleges no facts demonstrating defendant acted unlawfully. Under § 1839(5)(A) of the DTSA, misappropriation is defined as "<u>acquisition</u> of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means[.]" 18 U.S.C. § 1839(5)(A) (emphasis added). Section 1839(5)(B) further defines misappropriation as "<u>disclosure</u> or <u>use</u> of a trade secret of another without express or implied consent by a person who[:]"

> (i) used improper means to acquire knowledge of the trade secret;
> (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--
>> (I) derived from or through a person who had used improper means to acquire the trade secret;
>> (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>> (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>
> (iii) before a material change of the position of the person, knew or had reason to know that--
>> (I) the trade secret was a trade secret; and
>> (II) knowledge of the trade secret had been acquired by accident or mistake.

18 U.S.C. § 1839(5)(B) (emphasis added).

"Thus, the DTSA provides for 'three theories of liability: (1) acquisition, (2) disclosure, or (3) use.'" Inv. Sci., LLC, 2021 WL 3541152, at *5 (quoting Integra USA, Inc. v. Grain, 2019 WL 6030100, at *2 (S.D.N.Y. Nov. 14, 2019)). While a plaintiff seeking to show liability under an acquisition theory of misappropriation must demonstrate the person acquired their trade secret through improper means, "[d]isclosure or use under Section 5(B) can constitute misappropriation even where the information has not been acquired by improper means." Trahan v. Lazar, 457 F. Supp. 3d 323, 344 (S.D.N.Y. 2020).

Plaintiff's Amended Complaint rests on conclusory and circumstantial assumptions which fail to plausibly allege misappropriation. Ad Lightning Inc. v. Clean.io, Inc., 19-CV-7367, 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020). Plaintiff argues that he identified a need among independent artists for certain services, elements of his business plan and defendant's company appear broadly similar, therefore, defendant must have misappropriated plaintiff's trade secrets. Am. Compl. at 12 ("It is enough for me to look at United Masters and notice that there are similarities. . . ."). Even crediting plaintiff's characterizations, such similarities between his idea and defendant's business fail to push plaintiff's misappropriation claim across the line from "conceivable to plausible." Twombly, 550 U.S. at 570.

Plaintiff rests his misappropriation claim on the September 2017 phone call, which he identifies as a possible route for his trade secret to pass to defendants (in opposition he concedes that the "direct route of the trade secrets is unclear"). Opp. at 19. Plaintiff does not allege facts demonstrating that the trade secret was acquired through improper means. See Inv. Sci., LLC, 2021 WL 3541152, at *5 (finding that plaintiff's "conclusory allegation that the information at issue was shared with an understanding that the information was confidential" does not

14

demonstrate information was improperly acquired by defendant); Ad Lightning Inc., 2020 WL 4570047, at *3 (allegation that three of defendant's executives had access to plaintiff's trade secrets is not sufficient to demonstrate that they "actually acquired the information through improper means"). Far from alleging impropriety, plaintiff admits he shared his alleged trade secret on the September 2017 call without taking any tangible steps to protect its security, and therefore he "has failed to properly plead misappropriation." Inv. Sci., LLC, 2021 WL 3541152, at *5; see also Trahan, 457 F. Supp. 3d at 344 (S.D.N.Y. 2020) (finding plaintiff failed to "adequately allege" that defendants acquired material by improper means because "the IP was willingly given").

Nor does plaintiff plead facts demonstrating that defendant disclosed or used his trade secret. Plaintiff asserts that he can "presume there was some form of a connection" because the individual from the September 2017 call went to work for defendant. Opp. at 19. However, one can also presume that there was no connection to plaintiff's phone call and defendant worked to develop the company on its own. Ad Lightning Inc., 2020 WL 4570047, at *4 (holding plaintiff failed to plausibly allege defendant's similar ad monitoring software resulted from misappropriation, notwithstanding plaintiff's assertion it was the only "reasonable and logical explanation," and noting it was "equally reasonable" that defendant had worked to develop the software on its own); Inv. Sci., LLC, 2021 WL 3541152, at *5 (holding plaintiff failed to plausibly allege misappropriation by identifying financial features, in the form of "general financial terms," that appeared in its own trading plan and defendant's product). In short, plaintiff's claim that the alleged trade secrets he disclosed on the September 2017 resulted in defendant's misappropriation of his ideas is not plausible.

### C. Other Grounds

As plaintiff's Amended Complaint fails to state a claim, the Court need not reach defendant's argument that plaintiff individually lacks statutory standing to bring suit under the DTSA. Nor does the Court need to reach the issue of whether plaintiff's claims are time-barred, as defendant asserts.[11]

### III. Common Law Misappropriation of Trade Secrets

As discussed above, the elements of a trade secret misappropriation claim under New York common law are fundamentally identical to those under the DTSA. Therefore, defendant's motion to dismiss plaintiff's claim under New York law should be granted for substantially the same reasons that defendant's motion should be granted under federal law. Turret Labs USA, Inc., 2022 WL 701161, at *3.

### IV. Leave to Amend

"Ordinarily, *pro se* plaintiffs are granted opportunities to amend their complaints freely; however, courts need not afford plaintiffs an opportunity to amend where it is clear that any attempt to amend the complaint would be futile." Kimmel v. New York State Assembly, No. 20-CV-1074, 2020 WL 6273975, at *3 (E.D.N.Y. Oct. 26, 2020) (citing Cruz v. Gomez, 202 F.3d 593, 597–98 (2d Cir. 2000)). Here, plaintiff was put on notice of the deficiencies in his original complaint. See ECF No. 35 at 63-65. Plaintiff has been afforded the opportunity to amend. As plaintiff's Amended

---

[11] Federal claims under the DTSA must be brought within three-years of the date on which the misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). Plaintiff filed his complaint on October 14, 2021. Therefore, if plaintiff discovered or should have discovered defendant's alleged misappropriation before October 14, 2018, this action is time-barred. Defendant argues that the information plaintiff identifies as giving rise to his DTSA claim—namely, material on their website—was publicly available "no later than November 15, 2017, when United Masters launched its business publicly." Def's Mem. at 20. However, plaintiff does not clearly identify what specific information on United Masters' website led him to suspect misappropriation. Moreover, plaintiff's theory turns on the unnamed individual from the September 2017 call working for United Masters, which did not allegedly occur until February 2018—a fact plaintiff states he definitively learned in May 2021. Am. Compl. at 3-4.

Complaint fails to state a claim upon which relief can be granted, plaintiff should not be afforded leave to amend again.[12]

## CONCLUSION

Accordingly, it is respectfully recommended that the Court should grant defendant's motion to dismiss plaintiff's Amended Complaint.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: February 10, 2023
      Brooklyn, New York

---

[12] Plaintiff argues that it is defendant's burden to come forward with evidence sufficient to prove (to plaintiff's personal satisfaction) that United Masters did not misappropriate plaintiff's trade secrets. Am. Compl. at 3 ("The potential solution to end this case would be [for defendant] to show documentation of concept or idea creation (maybe a legal document?) prior to September 2017. If this is sufficient … I will likely drop this case[.]"). But that is not how claims under the DTSA work. Federal court is not a forum for plaintiff to "conduct an investigation into this situation." Id. Rather, plaintiff's complaint must allege facts that, when taken as true, plausibly state a claim upon which relief can be granted. Plaintiff has not done so.